765 P.2d 195

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Benson JIM, Defendant–Appellant.**

**No. 10425.**

Court of Appeals of New Mexico.

Oct. 18, 1988.

Certiorari Denied Nov. 18, 1988.

Jacquelyn Robins, Chief Public Defender and Linda Yen, Assistant Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen. and Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals a conviction for one count of great bodily injury by a motor vehicle, contrary to NMSA 1978, Section 66–8–101 (Repl.Pamp.1987). He raises three issues: (1) whether the prosecution improperly used one of its peremptory challenges to excuse a member of defendant's race; (2) whether the trial court improperly excused a potential juror for cause; and (3) whether the statute under which he was charged and convicted is unconstitutionally vague. Defendant also renews his motion to amend his docketing statement to assert three additional issues, first raised in his memorandum in opposition to the first calendar notice by way of motion to amend the docketing statement. The motion was denied in the second calendar notice. We

have reconsidered the denial and affirm it. The issues raised by defendant in his motion to amend the docketing statement are without merit. *See State v. Rael,* 100 N.M. 193, 668 P.2d 309 (Ct.App.1983). We are not persuaded by defendant's other contentions and, therefore, affirm.

Defendant was involved in an automobile accident in which he hit another vehicle driven by the victim head-on. There was evidence presented at the trial that defendant had been driving while intoxicated. The victim suffered a fracture to the hip, resulting from the femur being driven back into the hip joint. The orthopedic surgeon who treated the victim testified regarding the treatment the victim had to undergo, which included an operation to insert pins in the bone to hold it in place while it healed. The surgeon testified regarding the normal healing time and the time it took the victim to heal. The surgeon also testified regarding rehabilitation time. The victim testified regarding his injury and rehabilitation. Based on all the evidence presented at trial, the jury convicted defendant.

## JURY CHALLENGES

(a) Preliminary

Initially, we note that facts have been argued in the briefs that are not a part of the record. The facts are based on jury questionnaires, which were not made part of the record even though the trial court offered to do so. It is defendant's burden to bring up a record sufficient for review of the issues he raises on appeal. *See State v. Padilla,* 95 N.M. 86, 619 P.2d 190 (Ct.App.1980). If he does not, all inferences will be resolved in favor of the trial court's ruling. *Id.* This court will not consider any references made to the jury questionnaires. *See Southern Union Gas Co. v. Taylor,* 82 N.M. 670, 486 P.2d 606 (1971).

(b) Claim of Discriminatory Peremptory Challenge

Defendant argues that the prosecution improperly exercised a peremptory challenge against a potential juror of de-

fendant's race. At voir dire, defense counsel had informed the trial court and the panel that both defendant and the victim are Navajo Indians. No questions were asked of any potential jurors regarding their race. During selection of the panel, the prosecution exercised a peremptory challenge against Ms. Clah. Defense counsel objected that Ms. Clah is a Navajo Indian and, therefore, the prosecution had to state the reasons for the challenge. The prosecution responded that, other than her appearance, there was no showing that Ms. Clah was of the same race as defendant, and that Ms. Clah was struck on the basis of her questionnaire. After some discussion regarding the questionnaire, the trial court allowed the challenge.

The state's power to use peremptory challenges in criminal trials is limited by the equal protection clause of the federal Constitution. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *State v. Goode,* 107 N.M. 298, 756 P.2d 578 (Ct.App.1988); *State v. Sandoval,* 105 N.M. 696, 736 P.2d 501 (Ct.App.1987). These cases hold that the state may not use its peremptory challenges in a racially-discriminatory manner to exclude members of a cognizable racial group from a jury simply because of such membership. They hold that a claim of discriminatory use of peremptory challenges must be examined under a two-step process. First, defendant must make a prima facie showing that the state's challenges were exercised in a purposefully discriminatory manner. After defendant has made the requisite showing, the burden shifts to the state to come forward with a racially-neutral explanation for its challenges.

In order to establish a prima facie case, defendant must show that: (1) he is a member of a cognizable racial group; (2) the state has exercised its peremptory challenges to remove members of that group from the jury panel; and (3) these facts and any other relevant circumstances raise an inference that the state used its challenges to exclude members from the panel solely on account of their race. *Batson v. Kentucky; State v. Goode; State v. Sandoval.* In this case, there was no question

that defendant is a Navajo Indian. However, there was a question raised about Ms. Clah's race. She was not asked about her race and the only indication that she is a Navajo Indian, other than her appearance, was found on her questionnaire, which stated that she was born and lived in Shiprock. We note the prosecution did not, however, contest the trial judge's statement that Ms. Clah appeared to be a Navajo Indian.

Even assuming Ms. Clah is a Navajo Indian, defendant failed to show that an inference was raised that the state was using its challenges to exclude Navajo Indians from the jury panel. Meeting the first two criteria alone does not establish a prima facie case. The facts and circumstances surrounding the use of the challenge must raise the inference that the prosecution used the peremptory challenge to exclude persons from the jury on account of race. *See Batson v. Kentucky; United States v. Chalan,* 812 F.2d 1302 (10th Cir. 1987), *petition for cert. filed* August 8, 1988; *United States v. Ratcliff,* 806 F.2d 1253 (5th Cir.1986), *cert. denied,* 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 (1987); *People v. Staten,* 746 P.2d 1362 (Colo.App. 1987); *People v. Chevalier,* 159 Ill.App.3d 341, 111 Ill.Dec. 460, 512 N.E.2d 1001 (1987); *State v. Cantu,* 750 P.2d 591 (Utah 1988). Some of the circumstances which will raise an inference of racial discrimination are: (1) a showing by defendant that his racial group is substantially underrepresented on the jury; (2) the susceptibility of the case to racial discrimination as, for example, where defendant and the victim are of different races; and (3) a showing that the state's challenges have caused the jury to contain no members of defendant's race. *State v. Goode.*

In this case, defendant made no attempt to show that his racial group was substantially underrepresented on the jury. Likewise, this is not a case susceptible to racial discrimination as both defendant and the victim are Navajo Indians. *See State v. Goode.* There was no showing that the state's challenge caused the jury to contain no members of defendant's race. In fact,

the record shows that at least two Navajo Indians sat on the jury.

Defendant argues that we should not rule against him solely on the ground that some members of his race remained on the panel. *See generally United States v. Clemons*, 843 F.2d 741 (3rd Cir.1988). We have not done so. Rather, we are not persuaded that the circumstances on which defendant relies permit an inference that the prosecution used its peremptory challenge to exclude Ms. Clah from the jury on account of race. *Cf. id.* Defendant notes that the prosecutor successfully removed two other jurors for cause, who were Indian or appeared to be Indian, and never questioned Ms. Clah during voir dire. Defendant contends these circumstances, when taken together with the other facts, raise the necessary inference. We disagree.

The fact that the prosecutor removed some other Indian jurors for cause does not support an inference that the prosecutor removed Ms. Clah for an improper reason. *Cf. United States v. Chalan* (where all other Indian jurors were removed from panel through challenges for cause, there is a substantial risk that the government improperly used its peremptory challenges to remove the remaining Indian juror). There must be other relevant factors to support the inference. *See United States v. Clemons.*

The fact that the prosecutor failed to question Ms. Clah during voir dire is relevant in evaluating the state's explanation for its challenges. *See State v. Goode.* We do not think it is sufficient on these facts to support an inference of purposeful discrimination.

Based on the above, we find that defendant failed to establish a prima facie case of discriminatory use of the state's peremptory challenges. Therefore, we need not consider whether the state provided a racially-neutral explanation for the challenge.

### (c) Claim of Improper Excusing of Juror for Cause

■ Defendant also claims the trial court erred in excusing juror Thomas for cause. During voir dire, Ms. Thomas stated that defense counsel was a personal friend and that her sister worked for him. Upon questioning, Ms. Thomas stated that she had not discussed the case with her sister. There was no further questioning of Ms. Thomas. The state moved to disqualify her for cause. The trial court excused Ms. Thomas for cause.

An accused is entitled to trial by an impartial jury. N.M. Const. art. II, § 14 (Cum.Supp.1988). An impartial jury means a jury where each and every one of the twelve is free from any partiality whatsoever. *State v. McFall*, 67 N.M. 260, 354 P.2d 547 (1960). It is the duty of the trial court to make sure there is a fair and impartial jury. In doing so, it must exercise discretion, and such discretion will not be disturbed unless there is a manifest error or a clear abuse thereof. *State v. Cutnose*, 87 N.M. 300, 532 P.2d 889 (Ct. App.1975), *overruled on other grounds, State v. McCormack*, 100 N.M. 657, 674 P.2d 1117 (1984). The trial court has a great deal of discretion in excusing a juror for cause. *State v. Dobbs*, 100 N.M. 60, 665 P.2d 1151 (Ct.App.1983).

Defendant has not shown that the trial court abused its discretion in excusing a potential juror who was acquainted with defense counsel, even though at the time of voir dire she had no knowledge regarding the case. Defendant supports his argument with cases where prospective jurors were not excused for cause based on their acquaintance with defendants. *See, e.g., State v. Gilbert*, 100 N.M. 392, 671 P.2d 640 (1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984); *Crespin v. Albuquerque Gas & Elec. Co.*, 39 N.M. 473, 50 P.2d 259 (1935). These cases are not persuasive, however, because the courts stated that the trial courts did not abuse their discretion in not excusing for cause, since there was no showing that the juror would be less than fair. These are not the facts in this case. Moreover, the fact that the jurors in *Gilbert* and *Crespin* were allowed to be empanelled despite their acquaintance with the defendants has no bearing on whether the trial court in the

case before us abused its discretion in allowing the challenge for cause.

Defendant asserts the challenge should have been overruled because "there was no showing that Ms. Thomas could not be fair or impartial." This is not the standard for review, because it in no way indicates an abuse of discretion. Defendant has a legal right only to impartial jurors, not to the impartial jurors of his choice. *United States v. Puff*, 211 F.2d 171, 184–185 (2d Cir.), *cert. denied*, 347 U.S. 963, 74 S.Ct. 713, 98 L.Ed. 1106 (1954), states in part:

> [A] party is entitled to an array of impartial jurors to which he may direct his peremptory challenges.... [A] party is entitled to no more. Having no legal right to a jury which includes those who because of scruple or bias he thinks might favor his cause, he suffers no prejudice if jurors, even without sufficient cause, are excused by the judge. Only if a judge without justification overrules a challenge for cause and thus leaves on the panel a juror not impartial, does legal error occur.

*See also United States v. Calhoun*, 542 F.2d 1094 (9th Cir.1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977); 47 Am.Jur.2d *Jury* § 222 at 813 (1969) ("Discharging or excusing a qualified juror is not generally regarded as prejudicial or reversible error." (footnote omitted)). Defendant has not argued that the jurors chosen were not impartial.

Based on the statements made during voir dire, we cannot say there was manifest error or a clear abuse of discretion in excusing Ms. Thomas for cause.

## CONSTITUTIONALITY OF STATUTE

■ Defendant argues that the statute under which he was charged is unconstitutionally vague. The statute defines great bodily injury by a motor vehicle as "the injuring of a human being, to the extent defined in Section 30–1–12 NMSA 1978, in the unlawful operation of a motor vehicle." § 66–8–101(B). Section 30–1–12 is the definitional section of the Criminal Code, NMSA 1978, Sections 30–1–1 to 30–28–3 (Repl.Pamp.1984 & Cum.Supp.1988). In that section, great bodily harm is defined as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body[.]" § 30–1–12(A). Defendant argues that the term "protracted impairment" is unconstitutionally vague, thus denying him due process.

A statute violates due process if its language is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *State v. Ferris*, 80 N.M. 663, 459 P.2d 462 (Ct.App.1969); *see also Bokum Resources Corp. v. New Mexico Water Quality Control Comm'n*, 93 N.M. 546, 603 P.2d 285 (1979). "Constitutional vagueness is based on notice and applies when a potential actor is exposed to criminal sanctions without a fair warning as to the nature of the proscribed proceedings." *State v. Segotta*, 100 N.M. 498, 499–500, 672 P.2d 1129, 1130–1131 (1983); *see also Bokum Resources Corp. v. New Mexico Water Quality Control Comm'n*. Nevertheless, this court presumes that a statute is constitutional and will construe it so that it is not void for vagueness if a reasonable and practical construction can be given to its language. *State v. Segotta*. Simply because a term is not defined within the statute does not necessarily render it unconstitutional. *Gruschus v. Bureau of Revenue*, 74 N.M. 775, 399 P.2d 105 (1965). "The statute must be read and considered as a whole so as to ascertain its legislative intent, and the statute's words and phrases are to be considered in their generally accepted meaning." *State v. Segotta*, 100 N.M. at 500, 672 P.2d at 1131.

Neither the word "protracted" nor the word "impairment" has a technical meaning. Therefore, both words should be used in their ordinary sense. Defendant's concern is with the term "protracted." He claims that the word is capable of several meanings. However, "protracted" is defined as extended in time; long drawn out. *Webster's Third New International Dictionary* 1826 (1966). The term is capable of reasonable application to varying fact

patterns. *See State v. Mentola*, 691 S.W. 2d 420 (Mo.App.1985); *People v. Obertance*, 105 Misc.2d 558, 432 N.Y.S.2d 475 (1980). Other courts interpreting the same word in similar statutes have determined that what is considered protracted depends on the circumstances and is not so vague as to be unconstitutional. *Walker v. State*, 742 P.2d 790 (Alaska App.1987); *State v. Welton*, 300 N.W.2d 157 (Iowa 1981); *People v. Obertance*. We agree.

In its ordinary, common usage, protracted means a "lengthy or unusually long time under the circumstances." *People v. Obertance*, 105 Misc.2d at 559, 432 N.Y.S. 2d at 476. The concept of protracted is not beyond the grasp of the jury nor so indefinite that it allows unstructured discretion in applying it. The fact finder must consider the circumstances and determine whether there was a protracted impairment.

This interpretation of the term "protracted" in the definition of great bodily harm comports with the supreme court's interpretation of the terms "serious disfigurement" in this same statute. *State v. Ortega*, 77 N.M. 312, 422 P.2d 353 (1966). In *Ortega*, the supreme court held that the terms "disfigurement" and "serious" were to be used in their ordinary sense. The supreme court went on to say that it is a question of fact for the jury to determine whether the injuries sustained were sufficiently substantial to come within the definition of the statute.

The statute under which defendant was charged is not unconstitutionally vague. The term "protracted impairment" is capable of reasonable application by a jury of common intelligence after consideration of the circumstances involved.

Defendant's conviction and sentence are affirmed.

IT IS SO ORDERED.

DONNELLY, C.J., and MINZER, J., concur.