2003-NMCA-110

76 P.3d 1113

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**George BROWN III, Defendant– Appellant.**

**No. 23,219.**

Court of Appeals of New Mexico.

June 24, 2003.

Certiorari Denied, No. 28,167, Aug. 26, 2003.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

William G. Stripp, Ramah, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Defendant George Brown III, re-sentenced after remand from this Court, appeals his modified judgment and sentence. He raises six issues, three of which we do not consider for reasons we discuss below. We address the remaining three: whether the delay in re-sentencing violated Defendant's right to a speedy trial, whether entry of a civil forfeiture judgment before entry of the modified judgment and sentence resulted in double jeopardy, and whether the habitual offender enhancement to the trafficking sentence was legal. We affirm.

## I.  BACKGROUND

{2} On January 19, 1999, after a jury trial, Defendant was sentenced to twenty-six years imprisonment with two years parole. His sentences, ordered to run concurrently, were as follows: eighteen months plus an eight-year habitual offender enhancement, pursuant to NMSA 1978, § 31–18–17(D) (2002), for one count of possession of a controlled substance (cocaine), contrary to NMSA 1978, § 30–31–23 (1990); eighteen years plus an eight-year habitual offender enhancement

and two years parole, for each of two counts of trafficking a controlled substance (cocaine) by possession with intent to distribute as a second or subsequent such offense, contrary to NMSA 1978, § 30–31–20 (1990); 364 days for one count of possession of drug paraphernalia, contrary to NMSA 1978, § 30–31–25.1 (2001). We need not, for the purposes of this appeal, delve further into the criminal proceedings or detail the factual basis for the convictions.

{3} In Defendant's first appeal, decided by memorandum opinion (first appeal), Defendant appealed his original criminal judgment and sentence on the following five issues: whether merger of the two trafficking counts was required; whether the trial judge should have recused himself and the prosecuting attorney should have been disqualified; whether certain evidence was admissible; whether the proof of Defendant's prior felonies was constitutionally adequate; and whether the jury pool, without African-American representation, allowed him a fair trial. This Court agreed with Defendant that the trafficking counts must be merged into one count but affirmed in all other respects; we remanded for modification of the judgment and sentence on the trafficking counts. Our memorandum opinion was filed on April 26, 2000, and the mandate was sent to the trial court on August 8, 2000.

{4} While awaiting the mandate, Defendant became concerned about proceeding with his federal and state habeas petitions and on August 3, 2000, filed a motion to have the trial court schedule a re-sentencing hearing. The re-sentencing hearing was ultimately scheduled for January 4, 2002. In the interim, four district judges recused themselves from the case, and another was excused by the State. The case was assigned on September 21, 2000, to District Judge Paul Onuska.

{5} The following spring, on April 2, 2001, Defendant, in propria persona, petitioned our Supreme Court for a writ of habeas corpus. Both Defendant and the Supreme Court were under the mistaken impression that the trial court had re-sentenced Defendant on March 2, 2001. The Supreme Court, construing the writ as a direct appeal from the

modified judgment, denied the writ and transferred the case to this Court on June 29, 2001. In response to Defendant's motion for limited remand to allow entry of a modified judgment and sentence, this Court ordered the case dismissed and remanded to the trial court to enter a modified judgment and sentence pursuant to our April 26, 2000, memorandum opinion. We also informed Defendant that, should he wish to appeal the modified judgment and sentence, he should file a new notice of appeal pursuant to Rule 12–201(A) NMRA 2003. Our order, filed in this Court on October 24, 2001, was sent to the trial court with an accompanying mandate on December 12, 2001.

{6} The hearing on re-sentencing took place within three weeks from the trial court's receipt of the mandate. On April 16, 2002, the trial court entered the modified judgment, merging the two trafficking counts as directed by this Court. Because the original sentences for the two counts ran concurrently, Defendant's modified sentence remained twenty-six years with two years parole. Defendant timely appealed.

## II. DISCUSSION

### A. Issues Not Considered

■ {7} In our April 26, 2000, memorandum opinion, this Court responded to the five issues in Defendant's first appeal and affirmed the convictions on all but one count of trafficking cocaine. Three of Defendant's issues raised in the current appeal arose from his first trial and could have been brought in his first appeal. Those three issues are (1) there was insufficient evidence because the evidence showed Defendant possessed "crack cocaine" or "cocaine base" and he was convicted of offenses relating to "cocaine"; (2) the trial court should not have enhanced the trafficking conviction to a first degree felony while also adding a habitual offender enhancement to the basic sentence, i.e., double enhancement, although the statutes appear to contemplate just such enhancements under the facts presented; and (3) the trial court should have exercised its discretion to suspend all or a portion of the sentence although the pertinent statutes do not permit suspension of sentences for first degree felonies or habitual offender enhancements.

■ {8} Under the doctrine of law of the case, this Court will not now review issues that Defendant could have but did not raise in his first appeal. See Varney v. Taylor, 79 N.M. 652, 654, 448 P.2d 164, 166 (1968); Royal Int'l Optical Co. v. Tex. State Optical Co., 92 N.M. 237, 243, 586 P.2d 318, 324 (Ct.App.1978). Defendant's current appeal is limited to issues resulting from our reversal of the one trafficking conviction. See Varney, 79 N.M. at 654, 448 P.2d at 166 ("Having passed on the merits of the controversy in the prior appeal, there is nothing now before us except the proceedings subsequent to the mandate."). We recognize that the doctrine is discretionary and may not apply if it would result in a manifest injustice. Reese v. State, 106 N.M. 505, 507, 745 P.2d 1153, 1155 (1987). However, Defendant does not argue and there is no suggestion that injustice would result in this case; we therefore apply the doctrine. Consequently, we will not review the foregoing three issues in the current appeal.

### B. Right to a Speedy Trial

{9} A defendant's right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution. State v. Marquez, 2001–NMCA–062, ¶ 8, 130 N.M. 651, 29 P.3d 1052. Defendant contends that his right to a speedy trial was violated by a delay of twenty months from the time this Court reversed one of his trafficking convictions and remanded the case for re-sentencing until Defendant was actually re-sentenced.

#### 1. Application to Sentencing

{10} The State acknowledges that this Court assumed in State v. Todisco, 2000–NMCA–064, ¶ 18, 129 N.M. 310, 6 P.3d 1032, that the speedy trial right extends to sentencing proceedings but nevertheless requests us to reject such an extension. As we discussed in Todisco, the United States Supreme Court assumed, without deciding, in Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), that the speedy trial right applies to sentencing. Todisco, 2000–NMCA–064, ¶ 16, 129 N.M. 310,

6 P.3d 1032. Since then, the Tenth Circuit and those other federal courts of appeals that have addressed the issue have either considered the application of the speedy trial right to sentencing as established law or have perpetuated the Supreme Court's assumption in *Pollard*. *Id.* ¶ 16. Many state courts have either assumed or expressly determined that the right applies to sentencing. *Id.* ¶¶ 17–18. In this case, we continue the assumption made in *Todisco*.

### 2. The *Barker* Test

{11} We look to *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) for guidance in determining whether a defendant's "constitutional right to speedy sentencing" was violated. *Todisco*, 2000–NMCA–064, ¶ 19, 129 N.M. 310, 6 P.3d 1032. Under the *Barker* test, we balance, in light of the facts and circumstances of the particular case, (1) the length of the delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) prejudice to defendant. *Id.* ¶ 19; *see Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir.1986). In considering each of these factors, we defer to the trial court's factual findings but review de novo the question of whether Defendant's constitutional right was violated. *Todisco*, 2000–NMCA–064, ¶ 19, 129 N.M. 310, 6 P.3d 1032.

{12} The first factor, length of delay, serves two purposes. *State v. Coffin*, 1999–NMSC–038, ¶ 55, 128 N.M. 192, 991 P.2d 477. The length of the delay initially must "cross [ ] the threshold dividing ordinary from presumptively prejudicial delay" in order to trigger the *Barker* test. *Id.* (internal quotation marks and citation omitted). Only after we find presumptive prejudice is the length of the delay then balanced with the remaining three factors. *Salandre v. State*, 111 N.M. 422, 428, 806 P.2d 562, 568 (1991). Once Defendant demonstrates presumptive prejudice, it is the State's burden to show that it did not violate Defendant's speedy trial right. *Id.; State v. Plouse*, 2003–NMCA–048, ¶ 41, 133 N.M. 495, 64 P.3d 522.

{13} Because of the dispute between the parties as to the existence of presumptive prejudice, we consider this factor in some detail. Presumptively prejudicial delay refers to the prejudice to the defendant's "fundamental right to a speedy trial, not to specific prejudice covered by the fourth element" of the *Barker* test. *Salandre*, 111 N.M. at 427, 806 P.2d at 567; *Plouse*, 2003–NMCA–048, ¶ 41, 133 N.M. 495, 64 P.3d 522. Our Supreme Court has held that a nine-month delay is presumptively prejudicial for relatively simple cases and a fifteen-month delay is presumptively prejudicial for complicated cases. *Coffin*, 1999–NMSC–038, ¶ 56, 128 N.M. 192, 991 P.2d 477. Since there is no suggestion by the trial court or the parties that this case is complex or demanding, we apply the nine-month standard for relatively simple cases.

{14} The parties disagree, however, on how much of the delay in re-sentencing this Court should consider in determining whether presumptive prejudice exists. Defendant argues that the "twenty (20) month delay in providing Defendant with a re-sentencing hearing is presumptively prejudicial." The twenty-month period extends from the trial court's August 10, 2000, receipt of our first mandate to the trial court's April 16, 2002, entry of its modified judgment and sentence. The State urges that we consider a delay of just four months and two days from the trial court's December 14, 2001, receipt of our second mandate to the trial court's entry of its re-sentence. The bulk of the remaining months, the State argues, is attributable to Defendant filing his habeas corpus petition.

{15} We agree with Defendant's contention that the eight months from the trial court's August 10, 2000, receipt of our first mandate to his April 2, 2001, filing of the habeas corpus petition may be considered for the purposes of his speedy trial claim. However, Defendant may not benefit from other periods of the delay occurring after the filing of his habeas petition unless he demonstrates unreasonable delay by the prosecutor or wholly unjustifiable delay by the reviewing court. *See State v. Wittgenstein*, 119 N.M. 565, 570–71, 893 P.2d 461, 466–67 (Ct.App. 1995). Defendant fails to argue either unreasonable or wholly unjustifiable delay. We exclude from consideration, therefore, the

months from April 2, 2001, the date Defendant filed his habeas corpus petition, to December 14, 2001, the date the trial court received our second mandate. Approximately twelve months remain. We conclude that this delay is sufficiently long to establish the presumptive prejudice necessary for an inquiry into the other factors. *See Coffin,* 1999–NMSC–038, ¶ 56, 128 N.M. 192, 991 P.2d 477. Having established presumptive prejudice, the burden of persuasion and production shifts to the State to show that Defendant's speedy trial right was not violated. *Salandre,* 111 N.M. at 428, 806 P.2d at 568.

{16} Presumptive prejudice does not automatically weigh the length-of-delay factor against the State; instead, we consider how much of a delay there was past the "bare minimum needed to trigger" our analysis of the claim. *Marquez,* 2001–NMCA–062, ¶ 12, 130 N.M. 651, 29 P.3d 1052 (internal quotation marks and citation omitted); *Todisco,* 2000–NMCA–064, ¶ 21, 129 N.M. 310, 6 P.3d 1032. In this relatively simple case, the bare minimum was nine months; the delay stretched three months beyond the minimum. We therefore weigh this factor in Defendant's favor.

{17} In a speedy sentencing claim, the prejudice to defendant must be "substantial and demonstrable." *Perez,* 793 F.2d at 256 (footnote omitted); *State v. Massengill,* 2003–NMCA–024, ¶ 61, 133 N.M. 263, 62 P.3d 354 (Ct.App.2002); *Todisco,* 2000–NMCA–064, ¶ 23, 129 N.M. 310, 6 P.3d 1032. Only in the "rarest of circumstances" will a speedy sentencing claim succeed without a showing of prejudice. *Perez,* 793 F.2d at 256. As a result, the absence of prejudice outweighs other factors that may weigh in a defendant's favor. *See Todisco,* 2000–NMCA–064, ¶ 23, 129 N.M. 310, 6 P.3d 1032. This is because "[m]ost of the interests designed to be protected by the speedy trial guarantee diminish or disappear altogether once there has been a conviction, and the rights of society proportionately increase[.]" *Id.* (internal quotation marks and citation omitted). There must also be a showing of a "nexus between the undue delay and the prejudice claimed." *Id.* ¶ 29; *see Massengill,* 2003–NMCA–024, ¶ 61, 133 N.M. 263, 62 P.3d 354. We consider the absence of actual prejudice to Defendant dispositive in this case.

{18} The right to a speedy trial protects against "(1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility of impairment to the defense." *Plouse,* 2003–NMCA–048, ¶ 51, 133 N.M. 495, 64 P.3d 522 (internal quotation marks and citation omitted); *Todisco,* 2000 NMCA 064, ¶ 23, 129 N.M. 310, 6 P.3d 1032. Defendant contends that he suffered anxiety and concern in being unable to proceed with the appeals available to him until the modified judgment was entered, that his defense was impaired by the delay, and that, should his appeals be successful, he was subjected to oppressive incarceration during the delay.

{19} The trial court found that Defendant suffered some anxiety and concern, but determined that it was no greater than that of anyone whose liberty had been curtailed. We agree with the trial court and conclude that there is no showing of undue anxiety and concern rising to the level of a constitutional violation. *See Perez,* 793 F.2d at 257 (indicating that post-conviction, pre-sentencing anxiety of someone who unquestionably will serve a sentence and is only waiting to find out its duration is not to be equated for constitutional purposes with the anxiety of an accused); *Coffin,* 1999–NMSC–038, ¶ 69, 128 N.M. 192, 991 P.2d 477 ("[T]he constitutional inquiry focuses on undue prejudice."); *Salandre,* 111 N.M. at 430, 806 P.2d at 570 (agreeing with trial court that the defendant experienced some anxiety and concern but the anxiety and concern were not enough to "substantially tip the prejudice prong in [the defendant's] favor"); *Plouse,* 2003–NMCA–048, ¶ 53, 133 N.M. 495, 64 P.3d 522 (same).

{20} Furthermore, Defendant fails to state what defense he claims was impaired, and we are otherwise unable to discern any defense or find any evidence of impairment. Nor do we consider Defendant's conjecture that oppressive incarceration would result if his convictions were reversed. *See Perez,* 793 F.2d at 257 ("Speculative allegations of injury are unpersuasive."); *Todisco,* 2000–NMCA–064, ¶¶ 24–25, 129 N.M. 310, 6 P.3d 1032 (determining that a claim of prejudice based on speculation was insufficient to show actual and substantial prejudice). Defendant is re-

ferring to the various issues he has raised in this appeal and his previous habeas corpus petition, most of the latter of which have been abandoned on this appeal. The chances of Defendant obtaining relief on the basis of these issues are minuscule.

{21} Additionally, the record confirms the State's argument that the sentence initially imposed by the trial court would not have been reduced had the re-sentencing occurred earlier. Our memorandum opinion affirmed all but one of Defendant's trafficking convictions. The sentences for each of the two trafficking convictions ran concurrently. The merger of the trafficking convictions, therefore, would not affect the total number of years to be served for violating Section 30–31–20. As a result, the record does not provide proof that Defendant was demonstrably or substantially prejudiced from the delay in re-sentencing. *See Todisco*, 2000–NMCA–064, ¶ 29, 129 N.M. 310, 6 P.3d 1032 (holding no prejudice existed from re-sentencing delay when the evidence suggests that trial court would have arrived at the same determination without the delay). Because the showing of prejudice is critical in a speedy sentencing claim, *see Perez*, 793 F.2d at 256; *Massengill*, 2003–NMCA–024, ¶ 61, 133 N.M. 263, 62 P.3d 354; *Todisco*, 2000–NMCA–064, ¶ 23, 129 N.M. 310, 6 P.3d 1032, and because the record does not support a finding of prejudice to Defendant, we need not analyze the remaining factors. Accordingly, we affirm the trial court's conclusion that the State did not violate Defendant's right to speedy sentencing.

### C. Double Jeopardy

{22} In his brief in chief, Defendant informs us that a civil complaint was filed against him on March 1, 1998, requesting forfeiture of his pickup truck, $1,056 in currency, two cell phones, and a pager. The judgment in the forfeiture case was filed on March 30, 1999. Defendant argues that double jeopardy requires a dismissal of the criminal charges under *State v. Nunez*, 2000–NMSC–013, 129 N.M. 63, 2 P.3d 264, since a civil forfeiture judgment was entered prior to his modified judgment and sentence. In *Nunez*, our Supreme Court held that "all forfeiture complaints and criminal charges for violations of the Controlled Substances

Act may both be brought only in a single, bifurcated proceeding." *Id.* ¶ 104. The State acknowledges that Defendant's criminal and civil forfeiture cases, pending while *Nunez* was decided, were pursued through separate proceedings but argues that if this claim is entertained, Defendant would not be entitled to dismissal of the criminal proceeding because jeopardy attached in the criminal proceeding almost five months before entry of the civil forfeiture judgment.

{23} Defendant failed to include his forfeiture case as part of the record; without the record of the case, this Court is unable to review his double jeopardy claim. *See S. Union Gas Co. v. Taylor*, 82 N.M. 670, 672, 486 P.2d 606, 608 (1971) ("Matters not disclosed by the record fall outside the scope of our appellate review and will not be considered."); *see also State v. Jim*, 107 N.M. 779, 780, 765 P.2d 195, 196 (Ct.App.1988) (stating it is the defendant's burden to bring up a record sufficient for review of issues raised on appeal). Without a record, "all inferences will be resolved in favor of the trial court's ruling." *Id.* These propositions apply with equal force to double jeopardy claims. *See State v. Wood*, 117 N.M. 682, 687, 875 P.2d 1113, 1118 (Ct.App.1994).

### D. Legality of Enhancing Sentence Under the Habitual Offender Statute

{24} Defendant argues for the first time in his reply brief that at least three of the four convictions used to enhance his sentence by eight years under the habitual offender statute did not fall within the statutory definition of "prior felony conviction." The State, in a motion to strike new arguments from Defendant's reply brief, urges this Court not to consider these arguments. Defendant is correct that a claim of an illegal sentence is a jurisdictional issue and so may be raised for the first time on appeal. *See State v. Frost*, 2003–NMCA–002, ¶ 8, 133 N.M. 45, 60 P.3d 492; *State v. Sinyard*, 100 N.M. 694, 695, 675 P.2d 426, 427 (Ct.App. 1983). We therefore deny the State's motion to strike.

{25} Defendant contends that the enhancement was without authorization. He relies on an amendment to the habitual of-

**364**

fender statute that became effective after he was initially sentenced. The amendment defines a "prior felony conviction" as "any prior felony, when less than ten years have passed prior to the instant felony conviction since the person completed serving his sentence or period of probation or parole for the prior felony, whichever is later." § 31–18–17(D)(2) (2002). The legislature adopted this new definition of "prior felony conviction" in 2002. Previously, there was no time limit on the use of prior convictions. *See* NMSA 1978, § 31–18–17(D) (1993). Defendant contends that three of the felony convictions were over ten years old when the original certificate of conviction was filed with the trial court. However, Defendant fails to demonstrate why the 2002 amendment should apply retroactively to his convictions.

{26} Even if the statute were to apply retroactively to Defendant, it calculates a "prior felony conviction" by the date of completion of the sentence or period of probation or parole for the conviction, not by the date of the conviction. § 31–18–17(D)(2) (2002). Defendant is required to disclose facts in the record necessary for our review of the issue. *See Jim*, 107 N.M. at 780, 765 P.2d at 196. Defendant refers us to the modified judgment and sentence which provides the dates of his prior convictions but contains no information about the sentence or how and when it was served. The record therefore is insufficient for us to determine the merits of Defendant's argument.

### III. CONCLUSION

{27} For the reasons stated above, we affirm.

{28} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and JONATHAN B. SUTIN, JJ.