This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO. 28,362**

**FRANK MOESCH,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nancy M. Hewitt, Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**FRY, Chief Judge.**

Defendant Frank Moesch appeals from his conviction for aggravated battery and assault. On August 10, 2006, Defendant pleaded no contest to the charges against

him, but he was not sentenced until December 21, 2007, fifteen months and eleven days after he entered his plea. Prior to sentencing, Defendant moved to dismiss the charges against him, arguing that the delay in sentencing violated his right to speedy sentencing. The district court denied Defendant's motion and sentenced Defendant to one year of unsupervised probation. Defendant appealed. For the following reasons, we affirm.

**BACKGROUND**

Defendant was charged with one count of aggravated battery and two counts of assault stemming from an incident in which he allegedly struck a woman with his crutch and then pointed a gun at the woman and her boyfriend. On August 10, 2006, Defendant pleaded no contest to the charges against him, and the State agreed not to oppose a two-year suspended sentence with supervised probation. After Defendant entered his plea, the State sought to continue sentencing because the prosecutor who had been handling the case was in the hospital and the prosecutor covering in her absence preferred to defer sentencing to the prosecutor with more knowledge of the case. Defendant concurred with this request, and the court continued the sentencing. According to both paries, the State requested sentencing approximately one week later. However, due to an administrative error at the court, the State's request for sentencing was never acted upon, and the motion was never entered into the record.

Fifteen months later, the court set a sentencing hearing for December 21, 2007. The day before the hearing, Defendant filed a motion to dismiss the charges against him, arguing that his right to speedy sentencing had been violated. The court denied Defendant's motion and sentenced Defendant to a one-year suspended sentenced with unsupervised probation. Defendant appeals the district court's denial of his motion to dismiss.

**DISCUSSION**

Defendant argues that the fifteen-month delay between his no-contest plea and his sentencing hearing violated his right to a speedy trial. Specifically, Defendant argues that the delay violated his right to speedy sentencing, a subset of a defendant's right to a speedy trial. Defendant correctly points out that we have never explicitly held that a defendant's right to a speedy trial includes a right to speedy sentencing. In past cases where this issue has been raised, we have assumed, without deciding, that the right to a speedy trial includes a right to speedy sentencing. *See State v. Brown*, 2003-NMCA-110, ¶ 10, 134 N.M. 356, 76 P.3d 1113; *State v. Todisco*, 2000-NMCA-064, ¶¶ 16-18, 129 N.M. 310, 6 P.3d 1032. Because, as we explain more fully below, under the recent decision of our Supreme Court in *State v. Garza*, 2009-NMSC-038, ___ N.M. ___, 212 P.3d 387, Defendant cannot demonstrate that any right to speedy sentencing he may have was violated, resolving the question of

3

whether the right exists is not necessary to our disposition of the case, and we therefore decline to address the issue. *See Schlieter v. Carlos*, 108 N.M. 507, 510, 775 P.2d 709, 712 (1989) (expressing the rule that we should not "decide constitutional questions unless necessary to the disposition of the case").

The seminal case in speedy trial analysis is *Barker v. Wingo*, 407 U.S. 514 (1972). There, the United States Supreme Court identified four factors that guide our determination of whether a defendant's right to a speedy trial has been violated. Those factors, which have been adopted by our Supreme Court, are (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant. *State v. Maddox*, 2008-NMSC-062, ¶ 7, 145 N.M. 242, 195 P.3d 1254. These factors are to be weighed together, and we must determine whether, on balance, the defendant's right to a speedy trial has been violated. *Id.* Where, as here, a defendant argues that his right to speedy sentencing has been violated, we apply those same four factors. *Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir. 1986); *Todisco*, 2000-NMCA-064, ¶ 19.

**Length of Delay**

Defendant argues that the fifteen-month delay between the entry of his plea and his sentencing creates a presumption of prejudice that weighs strongly in favor of finding that his right to a speedy trial was violated and requires further analysis using

the *Barker* factors.  Recently, in *Garza*, our Supreme Court clarified the role that the length of delay plays in a speedy trial case.    2009-NMSC-038, ¶ 21.  The Court abolished "the presumption that a defendant's right to a speedy trial has been violated based solely on the threshold determination that the length of delay is 'presumptively prejudicial'" and held that "length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors." *Garza*, 2009-NMSC-038, ¶ 21.  In addition, the Court explained that due to changes in the Rules of Criminal Procedure, the benchmark for determining when a delay should trigger further analysis under the *Barker* factors is one year for simple cases, fifteen months for intermediate cases, and eighteen months for complex cases. *Garza*, 2009-NMSC-038, ¶ 48.  The new benchmark related to simple cases is applicable in the present case. *See id.* ¶ 50 (explaining that the new guidelines apply "to speedy trial motions to dismiss initiated on or after August 13, 2007").

   While we use the length of delay to determine whether to analyze a defendant's claim under the *Barker* factors, we must also consider the weight to give the length of delay because it is in itself one of the *Barker* factors. *Garza*, 2009-NMSC-038, ¶ 23.  In doing so, "we consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *State v. Coffin*, 1999-NMSC-038, ¶ 59, 128 N.M. 192, 991 P.2d 477 (internal quotation marks and

citation omitted). "[T]he greater the delay the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24.

Because Defendant had already pleaded no contest to the charges against him, leaving only his sentence to be determined by the court, his case should be considered a simple case. Thus, under the guideposts outlined by our Supreme Court in *Garza*, analysis under the *Barker* factors was triggered after one year. As far as the weight we give to the length of delay in our *Barker* analysis, the delay was only three months longer than the one-year delay that triggers our analysis. Thus, this factor weighs only slightly in Defendant's favor. *See Garza*, 2009-NMSC-038, ¶¶ 7, 24 (noting, under the old presumption that the *Barker* factors are triggered for a simple case after nine months, that a delay of ten months was not extraordinary and "does not weigh heavily in [the d]efendant's favor").

**Reason for the Delay**

The next factor we consider is the reason for the delay. Depending on the reason for the delay, the prejudice to Defendant may either be heightened or tempered. *Garza*, 2009-NMSC-038, ¶ 25. There are essentially three types of delay that can occur, each of which is weighed against the parties in a different manner. *See id.* If the delay is the result of an intentional attempt by the government to hamper the defendant's defense, the delay will be weighed heavily against the state. *Id.* If the

delay is the result of negligent or administrative delay, the delay is weighed against the state in proportion with the length of the delay. *Id.* ¶ 26. The longer a negligent or administrative delay is, the more heavily the state's negligence in bringing the case to trial will weigh against the state. *Id.* Finally, if there is a valid reason for the delay, the delay may be justifiable and not weigh against either party. *See id.* ¶ 27.

Here, the district court accepted full responsibility for the delay in sentencing Defendant. Following Defendant's no-contest plea, the State moved the court to set a sentencing hearing. However, due apparently to an administrative error, the district court did not schedule the hearing, and the court accepted the majority of responsibility for the failure to sentence Defendant in a more timely manner. Thus, the delay is an administrative delay that weighs against the State in proportion with the length of the delay. Because we have already concluded that the length of the delay in this case was not excessive, the fact that the delay was caused by an administrative error of the court weighs only slightly against the State. *See id.* ¶ 30.

**Defendant's Assertion of the Right to a Speedy Trial**

In order to determine the weight to give to a defendant's assertion of his right to a speedy trial, we "assess the timing of the defendant's assertion and the manner in which the right was asserted," giving "weight to the frequency and force of the defendant's objections to the delay." *Id.* ¶ 32 (internal quotation marks and citation

omitted).  The United States Supreme Court noted in this context that "[t]he strength of [the defendant's] efforts will be affected . . . most particularly by the personal prejudice . . . that [the defendant] experiences." *Barker*, 407 U.S. at 531.  The Court explained that "[t]he more serious the deprivation, the more likely a defendant is to complain" and that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 531-32.

Here, Defendant's sole assertion of his right to speedy sentencing was in a motion to dismiss filed the day before the sentencing hearing.  Aside from this motion, Defendant did not in any way assert his right to speedy sentencing during the entire fifteen-month period between his plea and his sentencing hearing.  We have previously held that a last minute motion to dismiss is to be given less weight than a motion for speedy trial filed earlier in the proceedings.  *See State v. Tortolito*, 1997-NMCA-128, ¶ 17, 124 N.M. 368, 950 P.2d 811 (noting that a defendant's motion to dismiss the case one year after he was arrested, in the absence of any other assertion of the right to speedy trial, was a "late assertion of his right to a speedy trial [that did] not weigh significantly in his favor").

Because Defendant did not assert his right to speedy sentencing until the day before the sentencing hearing, we conclude that Defendant acquiesced in the delay.  *See Perez*, 793 F.2d at 256 (noting that because a defendant did not file any motion

8

regarding speedy sentencing for nine months of a fifteen-month delay, the delay was "at the instance or with the acquiescence of defendant and his counsel"). This factor therefore does not weigh significantly in favor of Defendant. *See Tortolito*, 1997-NMCA-128, ¶ 17.

**Prejudice**

The final and most important factor in a post-conviction situation is whether Defendant was prejudiced by the delay between his conviction and his sentencing. *See Perez*, 793 F.2d at 256 (noting that "it might be said that once a defendant has been convicted it would be the rarest of circumstances in which the right to a speedy trial could be infringed without a showing of prejudice"). In an ordinary speedy trial case, we consider three distinct types of prejudice that a defendant can suffer as a result of delay: (1) oppressive pretrial incarceration; (2) the anxiety and concern of the accused; and (3) the possibility that the defense will be impaired. *Garza*, 2009-NMSC-038, ¶ 35. When a defendant asserts the right to speedy sentencing, however, these considerations change significantly. As we explained in *Todisco*, "[t]he alteration of defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process." 2000-NMCA-064, ¶ 23 (internal quotation marks and citation omitted). Once a defendant is convicted, "[m]ost of the interests designed to be

protected by the speedy trial guarantee diminish or disappear altogether" and "the rights of society proportionately increase." *Id.* (internal quotation marks and citation omitted). Our concerns about oppressive pre-trial incarceration and an impaired defense, for example, disappear completely once a defendant has been convicted. Because the interests protected by the speedy trial guarantee change so significantly following a conviction, "the prejudice claimed by the defendant must be substantial and demonstrable." *Id.* (internal quotation marks and citation omitted).

Defendant argues that he was prejudiced because "he suffered anxiety and concern due to the delay in this case." While Defendant was aware that the prosecutor had agreed not to oppose probation, Defendant argues that he was still uncertain about his fate, and therefore suffered anxiety, because "there was no way for [Defendant] to know that the court would agree to this disposition." Below, Defendant also argued that he suffers from post-traumatic stress disorder and that because of his condition, "the time spent awaiting sentencing has been traumatic for him." Further, Defendant argued that he was subject to restrictions on his liberty while awaiting sentencing because he was subject to conditions of release. Defendant contends that once he made the argument that he suffered anxiety, the State had the burden to prove that he did not suffer from anxiety.

10

Defendant presented no evidence regarding any anxiety that he may have suffered, relying instead on the bare assertion that the mere existence of the delay caused him anxiety. Our Supreme Court has noted that "[s]ome degree of oppression and anxiety is inherent for ever[y] defendant who is jailed while awaiting trial" and that this factor will therefore only be weighed in a defendant's favor when "the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35 (alterations in original) (internal quotation marks and citation omitted). The Court went on to note that "without a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration . . . or the degree of anxiety a defendant suffers." *Id.* Here, Defendant's assertion that he suffered from anxiety while awaiting sentencing is insufficient to establish prejudice. Defendant offered no evidence to suggest that he suffered from an undue level of anxiety and, contrary to Defendant's argument, the State does not have the burden to prove that Defendant did not suffer from undue anxiety. Rather, Defendant has the burden of proving that he suffered from undue anxiety. *Maddox*, 2008-NMSC-062, ¶ 32 (noting that the defendant has the burden of production on the issue of prejudice).

Not only did Defendant fail to meet his burden of presenting evidence that he suffered from undue anxiety, but when viewed in the context of Defendant's assertion of the right to a speedy sentencing, Defendant's argument that he was prejudiced by

11

severe anxiety holds less weight. Had Defendant been suffering from severe anxiety, he could have easily moved the court to hold a sentencing hearing or otherwise asserted his right to a speedy sentencing. *See Barker*, 407 U.S. at 531 (explaining that the strength of a defendant's efforts to protest delay will be affected by the prejudice the defendant experiences). Not only would this have helped to relieve some of his anxiety regarding the uncertainty of his sentence, but it would also have given him a stronger argument that his right to speedy sentencing was violated had the district court ignored his request and continued to delay the proceedings.

Finally, while Defendant argues that he was prejudiced by being subject to conditions of release while he was awaiting sentencing, our Supreme Court has explicitly held that being subjected to conditions of release "is not the type of prejudice against which the speedy trial right protects." *Garza*, 2009-NMSC-038, ¶ 37. Thus, in order to meet his burden under the prejudice factor of the *Barker* test, Defendant was required to show more than he merely suffered from some anxiety and that he had to comply with his conditions of release.

Because Defendant has failed to show that he suffered from any undue anxiety, we conclude that Defendant was not prejudiced by the delay in sentencing. This factor therefore does not weigh in Defendant's favor.

**Balancing Test**

On balance, we conclude that Defendant's right to a speedy sentence was not violated in this case. The first three factors weigh only slightly in Defendant's favor. The delay was not extraordinarily long and the delay was the result of the court's administrative error, not the State's intentional act. In addition, Defendant failed to assert his right to a speedy sentence in any meaningful manner. While all of these first three factors weigh slightly in Defendant's favor, they alone are insufficient to compel the conclusion that Defendant's rights were violated especially where, as here, Defendant has failed to show that he was subjected to any undue prejudice. *See Garza*, 2009-NMSC-038, ¶ 39 (holding that "a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect" unless "the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiseced to the delay"); *Todisco*, 2000-NMCA-064, ¶ 23 (explaining that a defendant's prejudice must be substantial and demonstrable in a speedy sentencing case).

**CONCLUSION**

For the foregoing reasons, we affirm the district court's order denying Defendant's motion to dismiss the charges against him.

**IT IS SO ORDERED.**

13

 

CYNTHIA A. FRY, Chief Judge

WE CONCUR:

JONATHAN B. SUTIN, Judge

MICHAEL E. VIGIL, Judge