This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    **NO. 29,043**

**GILBERT JIMENEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Gilbert Jimenez (Defendant) pled guilty to possession of marijuana with intent to distribute in December 1995 but was not sentenced until 2008. Defendant contends the nearly thirteen-year delay between his plea and his sentence violates his right to speedy sentencing. We affirm.

**I.     BACKGROUND**

On December 27, 1995, Defendant pled guilty to possession of marijuana with intent to distribute, contrary to NMSA 1978, § 30-31-22(A)(1)(a) (1990). Notice of a sentencing hearing to be held on March 27, 1996, was mailed to Defendant but was returned as undeliverable. When Defendant did not appear at the hearing, a bench warrant was issued for his arrest.

In January 2008 the State filed a motion to re-issue a bench warrant nunc pro tunc. In it, the State explained that it had learned that the original warrant had not been entered into the NCIC. The motion was granted, and Defendant was arrested in March 2008. The district court entered its judgment against Defendant on September 5, 2008, sentencing him to a term of eighteen months, all of which was suspended. We develop additional facts in this Opinion as needed.

**II.    DISCUSSION**

Defendant makes five arguments: (1) that his conviction should be reversed because his right to speedy sentencing was violated, (2) that the district court erred in

not allowing defense counsel extra time to gather evidence of a purported deal with police, (3) that it was error to impose the DNA and domestic violence fees against him, (4) that it was error not to hold a presentment hearing, and (5) that there was cumulative error. We address each of these arguments in turn.

**A.    Speedy Sentencing**

Defendant argues that the almost thirteen-year delay between his conviction and his sentencing violated his right to a speedy sentencing. The State appears willing to assume such a right exists, but contends that under the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), Defendant has not been deprived of his right to a speedy trial.

As Defendant acknowledges, neither the United States Supreme Court nor the courts of New Mexico have ever held that there is a right to speedy sentencing. Although our Courts have repeatedly assumed without deciding that this right exists, these assumptions are not authority that a right to speedy sentencing exists. *See Guest v. Berardinelli*, 2008-NMCA-144, ¶ 29, 145 N.M. 186, 195 P.3d 353 (holding that an appellant had failed to support an argument with authority when the only authority cited consisted of cases that had assumed without deciding that a legal proposition was true). Nevertheless, even if we once again assume that a speedy sentencing right exists, Defendant has failed to show that this right was violated.

We first assumed without deciding that a speedy sentencing right existed in *State v. Todisco*, 2000-NMCA-064, 129 N.M. 310, 6 P.3d 1032. In that case, we followed *Pollard v. United States*, 352 U.S. 354 (1957), by assuming, for the sake of argument, that such a right would derive from the right to a speedy trial. *Todisco*, 2000-NMCA-064, ¶ 16. Accordingly, we applied the four-factor balancing test of *Barker*, weighing the "(1) the length of delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) prejudice to the defendant." *Todisco*, 2000-NMCA-064, ¶ 19. This test "protects against three types of prejudice: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility of impairment to the defense." *Id.* ¶ 23.

Even in *Todisco*, our first speedy sentencing case, we seemed aware of the poor fit between the concerns embodied in the *Barker* factors and those applicable to speedy sentencing. We noted that when the *Barker* factors are applied to speedy sentencing, the "necessity of showing substantial prejudice dominates." *Todisco*, 2000-NMCA-064, ¶ 20. But with respect to the three types of prejudice *Barker* aims to prevent, we declared that "[m]ost of the interests designed to be protected by the speedy trial guarantee 'diminish or disappear altogether once there has been a conviction.'" *Todisco*, 2000-NMCA-064, ¶ 23 (citation omitted). Obviously, once a defendant is convicted, pretrial incarceration and impairment of defense are no longer

4

possible.  We have also taken note of indications in *Perez v. Sullivan*, 793 F.2d 249, 257 (10th Cir. 1986), that "post-conviction, pre-sentencing anxiety of someone who unquestionably will serve a sentence and is only waiting to find out its duration is not to be equated for constitutional purposes with the anxiety of an accused."  *State v. Brown*, 2003-NMCA-110, ¶ 19, 134 N.M. 356, 76 P.3d 1113.  Finally, we have implied that at least one other type of prejudice could exist in the pre-sentencing context—that a more timely sentencing would have resulted in a reduced sentence.  *See Todisco*, 2000-NMCA-064, ¶ 21.

Given the heavy weight our cases have given to prejudice, it is not surprising that the court in *Todisco* assumed, without deciding, that the other three *Barker* factors weighed in favor of the defendant.  *See Todisco*, 2000-NMCA-064, ¶ 20.  However, even under this generous assumption, the Court held that there was no speedy sentencing violation because the defendant had not shown that he was prejudiced.  *Id.* Similarly, in *Brown*, the Court determined that "because the record does not support a finding of prejudice to [the d]efendant, we need not analyze the remaining factors." 2003-NMCA-110, ¶ 21.

Under *Todisco*, Defendant's rights were not violated because he has not shown that he was prejudiced.  As in *Todisco*, we assume without deciding that a right to speedy sentencing exists, and that the first three *Barker* factors weigh in favor of

defendant. Defendant need only show substantial prejudice. Defendant makes the bare assertion that the "delay prejudiced him by forcing him to wait over twelve years after his plea to resolve his case." But the delay by itself is not one of the three types of prejudice that *Barker* addresses. To the extent that this assertion could be read to be directed at "anxiety and concern of the accused," we note that Defendant was no longer accused, but had pled guilty and was convicted. *See Brown*, 2003-NMCA-110, ¶ 18. Furthermore, Defendant points to no specific evidence of anxiety, and we will not speculate. *See State v. Garza*, 2009-NMSC-038, ¶ 35, 146 N.M. 499, 212 P.3d 387. Defendant also does not show how a more timely sentencing would have resulted in a lesser sentence; indeed, Defendant was given the lightest possible sentence for this conviction.

However, we cannot end our analysis at prejudice. The Supreme Court's decision in *Garza* highlights the poor fit between the *Barker* factors for speedy trial and concerns relevant to speedy sentencing. In *Garza*, the Court explained that a defendant need not make a particularized showing of prejudice when the other three *Barker* factors weigh heavily in the defendant's favor. *See Garza*, 2009-NMSC-038, ¶¶ 38-40. In particular, the Court held that "if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for

6

a court to conclude that the defendant's right has been violated." *Id.* ¶ 39. The opinion also noted that "none of [the *Barker* factors] alone are sufficient to find a violation of the right" to speedy trial. *Garza*, 2009-NMSC-038, ¶ 23.

Although the language in *Garza* complicates the analysis, Defendant still cannot show his speedy sentencing rights were violated. Because *Garza* informs us that no single factor is dispositive, we can no longer base our decision solely on prejudice and must look at each factor. As we have discussed, Defendant has failed to show prejudice, so Defendant's rights were violated only if the other three factors weigh heavily in Defendant's favor.

The first *Barker* factor, length of delay, weighs heavily against the State. *See Garza*, 2009-NMSC-038, ¶¶ 24, 30 (noting that greater delays weigh more heavily against the State). The State argues that this factor should count against Defendant because Defendant absconded without leaving any way to contact him. But Defendant's actions resulted in the issuance of the bench warrant which the State did not serve or enter into NCIC. The State made no further efforts to find Defendant for over a decade. Because the burden is on the State to bring the trial to a conclusion, this factor weighs against the State. *See Todisco*, 2000-NMCA-064, ¶ 22. And although the State's negligence in this matter requires us to weigh the delay less heavily than if the State had intentionally delayed, *see Garza*, 2009-NMSC-038, ¶¶

25-26, the extreme length of the delay nevertheless causes this factor to assume a heavy weight.

The second factor, reasons for delay, weighs slightly against the State. The initial delay was caused by Defendant's failure to appear for his sentencing hearing. However, after the State obtained a warrant, it did nothing to execute it for years. In 2005 the State filed motions to proceed without certain evidence, but made no further effort to address Defendant's failure to appear. Only three years later did the State finally take action to find Defendant. Once the warrant was entered in NCIC, Defendant was quickly found and sentenced.

The third factor, assertion of the right, weighs against Defendant because Defendant acquiesced in the delay. Although Defendant was aware that he would be sentenced, he made himself unavailable. Furthermore, at no point in the almost thirteen years between his plea and sentencing did he assert his purported right to a speedy sentencing. Only after the State had finally arrested him did he assert this right. Because only one of the first three factors weighs in Defendant's favor, his rights have not been violated even under *Garza*. Accordingly, even assuming he has a right to speedy sentencing, that right was not violated.

**B.      Evidence of Separate Police Agreement**

Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), Defendant argues that his right to present a defense was violated when the district court chose not to allow further time for Defendant to investigate his theory that he had made a deal with the State in return for help on two unrelated cases.  We review the district court's decision to deny a request to hold an evidentiary hearing for abuse of discretion.  *See State v. Guerro*, 1999-NMCA-026, ¶ 24, 126 N.M. 699, 974 P.2d 669 (applying an abuse of discretion standard to the district court's refusal to hold an evidentiary hearing on a plea withdrawal motion).  "The trial court abuses its discretion when it can be shown to have acted unfairly, arbitrarily, or [to have] committed manifest error." *Id.*

The district court did not abuse its discretion in denying the request for a hearing.  At the hearing, Defendant requested more time to pursue its investigation of a purported deal with investigators of an unrelated case.  The district court responded that it was inclined to be lenient on Defendant because he had not committed any further crimes during the thirteen years.  The court further noted that its decision to be lenient would not be influenced one way or the other by any evidence of a separate deal.  The court then suspended Defendant's entire sentence.  Under these

9

circumstances, we cannot say that the district court acted unfairly, arbitrarily, or committed manifest error.

**C.     DNA and Domestic Violence Fees**

Defendant next argues that he should not have been required to pay the DNA and domestic violence fees. These fees are collected pursuant to statutes enacted after Defendant was convicted. *See* NMSA 1978, § 29-16-11 (1997) (imposing a DNA fee); NMSA 1978, § 31-12-12 (2008) (imposing the domestic violence fee). Defendant also contests the fees on the basis that the State did not request a presentment hearing after defense counsel signed the order with "oppose[d]" instead of his name. Although the State does not object to deletion of the fees, it notes that "counsel signing 'opposes' on his signature line on the Judgment and Sentence . . . failed to alert the court to the specific claim of error he raises now."

We agree with the State that these arguments were not preserved. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496-97, 745 P.2d 717, 721-22 (Ct. App. 1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court."). Defendant points to no part of the record where the claims were preserved. *See* Rule 12-213(A)(4). The State points to what appears to be the only evidence of preservation in the record: that defense counsel signed the order as "opposes."

10

Merely signing "opposes" did not invoke a ruling on whether the DNA or domestic violence fees could apply to a defendant who was convicted before the relevant statutes were passed.

Defendant nevertheless contends that the State's failure to request a hearing after defense counsel signed "opposes" to the order "resulted in the court entering an order that contained fees and an order to provide a biological sample that were not applicable to this case." In support of this, Defendant points to a local rule requiring the prevailing party to request a hearing within ten days when approval of opposing counsel cannot be obtained. *See* LR3-212(F). But this same rule requires that "[i]f opposing counsel does not agree as to the form of order or judgment, such counsel shall send written objection, if any, by letter, to the court and counsel within five (5) days from the receipt of the order or judgment." LR3-212(F)(4). Such a letter would presumably have alerted the court to the specific issues Defendant now raises; however, no such letter appears in the record. Because Defendant did not preserve these issues and did not file the letter of opposition required by LR3-212(F)(4), we do not address them.

11

**D.     Cumulative Error**

Finally, Defendant argues that reversal is required due to cumulative error. As we have found no error, there can be no cumulative error. *See State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211.

**III.     CONCLUSION**

For the foregoing reasons, we affirm the judgment and order and remand for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____

**RODERICK T. KENNEDY, Judge**

12