This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                                 **NO. 28,398**

**JESSIE LACASSE,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

     Defendant appeals from a judgment and sentence of the district court following a jury trial where he was convicted of two counts of criminal sexual penetration in the

second degree (CSP II), aggravated assault with intent to commit a violent felony, aggravated burglary, armed robbery, and first degree kidnapping, all with a firearm enhancement. Defendant was also convicted of interference with communications, larceny, larceny (over $250), receiving stolen property, receiving stolen property (over $250), residential burglary, unlawful taking of a vehicle (over $2500), and criminal damage to property (under $1000).

On appeal, Defendant argues: (1) that the jury was improperly instructed on the kidnapping charge, (2) that several of his convictions violate the prohibition against double jeopardy, (3) that he received ineffective assistance of counsel, (4) that the evidence was insufficient to support the verdict, and (5) that the district court erred by denying his motion to suppress. We affirm.

**BACKGROUND**

In May 2005, Defendant's parents' home was broken into, and firearms and other valuables were stolen. On June 3, 2005, the home of a family with whom Defendant was acquainted (the Weeks) was also burglarized. Several items were stolen from the Weeks' home, and a red Honda was stolen from the driveway. By his own admission, Defendant drove the Weeks' Honda to the home of Victim, where he raped her at gunpoint after breaking in through a window and demanding money. Following the rape, Defendant stole Victim's truck. Victim went to a neighbor's

2

house, called the police, and was taken to the hospital where she gave a statement to police and was examined by a SANE nurse.

A few days later, the police recovered Victim's vehicle. A witness informed police that he knew who had been driving the truck, and said that the person lived at Defendant's parents' home. The police obtained consent to search the home, where they found Defendant hiding in a closet. Pursuant to questioning, Defendant confessed on tape and submitted to DNA testing. Defendant moved to suppress his taped confession, but the motion to suppress was denied.

After a jury trial, Defendant was convicted of all charges. This appeal followed. The facts relevant to each of Defendant's issues are more fully discussed below.

**DISCUSSION**

**First Degree Kidnapping Jury Instruction**

Defendant argues on appeal that his conviction for first degree kidnapping was improper because the jury instructions failed to require the jurors to differentiate between a conviction for first and second degree kidnapping.

"The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error. Under both standards we seek to determine whether a reasonable juror would have been confused or

3

misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted). "The adequacy of a jury instruction is evaluated in the context of all the instructions given to the jury, in order to determine whether the instruction accurately states the law." *State v. Sosa*, 1997-NMSC-032, ¶ 25, 123 N.M. 564, 943 P.2d 1017.

Because this issue was not preserved below, we evaluate Defendant's argument to determine whether a fundamental error occurred. "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066, *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783.

Defendant argues that a fundamental error occurred when the jury was not given UJI 14-6018 NMRA in addition to UJI 14-403 NMRA. Defendant asserts that UJI 14-6018 is mandatory in all cases where first degree kidnapping is charged, and without the UJI 14-6018 special interrogatories, the jury's verdict cannot support a first degree kidnapping conviction. Defendant's argument, which is based upon Use Note 1 of UJI 14-403, is misplaced. Use Note 1 of UJI 14-403 states that UJI 14-6018 must be given "if first degree kidnapping *is an issue*." UJI 14-403, Use Note 1 (emphasis added). UJI 14-6018 asks the jury to determine whether the defendant released a victim of kidnapping in a safe place and whether the defendant subjected

4

the victim to physical injury. *See* UJI 14-6018, Use Note 1. For the reasons that follow, the first degree kidnapping was not an issue in this case.

The jury was instructed on the elements of first degree kidnapping. NMSA 1978, Section 30-4-1(B) (2003) states, "Whoever commits kidnapping is guilty of a first degree felony, except that he is guilty of a second degree felony when he voluntarily frees the victim in a safe place and does not inflict physical injury or a sexual offense upon the victim." The essential elements of first degree kidnapping are that (1) Defendant took, restrained or confined Victim by force, intimidation, or deception; (2) Defendant intended to hold Victim against Victim's will to inflict death, physical injury or a sexual offense on Victim; and (3) this happened in New Mexico on or about June 3, 2005. *See* UJI 14-403.

Section 30-4-1(B) is clear that kidnapping is generally a first degree offense, and is only reduced to second degree if the kidnapper does not physically harm or sexually assault the victim, *and* releases the victim in a safe place. *See* § 30-4-1(B). Defendant was charged with first degree kidnapping. The jury in this case received a special interrogatory requiring the jury to determine whether Defendant inflicted a physical injury or sexual offense upon Victim. The jury found beyond a reasonable doubt that Defendant both kidnapped and sexually assaulted Victim.

Defendant's fundamental error argument is based on his contention that without UJI 14-6018, the jury has not been instructed on every element of the crime. The

5

crime of first degree kidnapping requires only the elements of restraint with intent to inflict death, physical injury, or sexual offense. *See* § 30-40-1(B). UJI 14-6018, on the other hand, is to be used if there is an issue relating to freeing the victim in a safe place or whether the defendant has inflicted great bodily harm on the victim. If either of the two exceptions to first degree kidnapping is present or in question, then the jury needs to be instructed.

The district court was not required to provide the jury with UJI 14-6018 because neither of the triggering conditions was "an issue" in this case. The jury found that Defendant took, restrained, or confined Victim by force, intimidation or deception, intending to inflict death, physical injury, or sexual offense on her, and did inflict physical injury or sexual offense on her. Thus, the jurors found beyond a reasonable doubt that Defendant committed all elements of first degree kidnapping. In any event, the jury was given a special interrogatory asking whether Defendant had inflicted a sexual offense in the course of the kidnapping. It answered "yes." We do not believe that the jury was confused or misdirected, or that it would shock the conscience to allow the conviction for first degree kidnapping to stand. Finding no fundamental error, we affirm Defendant's conviction for first degree kidnapping.

**Double Jeopardy**

Defendant argues that the prohibition against double jeopardy bars his convictions for both CSP II and kidnapping under the theory that he has been

subjected to multiple punishments for the same offense. He also argues that the firearm enhancement for CSP II, aggravated burglary, and armed robbery constitute multiple punishment.

We generally apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. "However, where factual issues are intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737.

Here, Defendant argues a "double description" violation of double jeopardy. *See State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (describing the two types of double jeopardy cases). For "double description" cases, we apply the two-part test defined in *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991): (1) whether the conduct is unitary and (2) if so, whether the Legislature intended to create separately punishable offenses based on the statutes. *DeGraff*, 2006-NMSC-011, ¶ 26. Conduct is non-unitary if "sufficient indicia of distinctness" separate the illegal acts. *Swafford*, 112 N.M. at 13, 810 P.2d at 1233.

To determine whether sufficient indicia of distinctness support a conviction for two separate crimes, we review the following factors: "separation between the illegal acts by either time or physical distance, the quality and nature of the individual acts,

7

. . . the objectives and results of each act[,] . . . the existence of an intervening event, the defendant's intent as evinced by his or her conduct and utterances, the number of victims, and the behavior of the defendant between acts." *State v. Contreras*, 2007-NMCA-045, ¶ 21, 141 N.M. 434, 156 P.3d 725 (internal quotation marks and citation omitted). We will not find that a defendant's conduct is unitary where the defendant completes one of the charged crimes before committing the other. *See State v. Bernal*, 2006-NMSC-050, ¶ 11, 140 N.M. 644, 146 P.3d 289 (holding conduct was not unitary where intruders broke into a home, murdered one victim, then attempted to rob a second victim; the murder was complete before the attempted robbery occurred).

Defendant asserts that in this case, kidnapping and CSP II cannot be considered two separate acts because they lack sufficient indicia of distinctness. He argues that holding Victim against her will to inflict a sexual offense upon her, and actually inflicting that offense, was unitary conduct because it was not separated by time or place. He further contends that the State did not introduce evidence at trial to support a finding that Victim was confined or restrained at any time other than when she was being sexually assaulted. We disagree.

According to Victim's testimony, Defendant broke into her home, pointed a gun at her, and demanded money. Stating that she had no money, Victim offered Defendant a variety of other valuables instead. Defendant allowed her to let her barking dog out of the house then ordered her to take off her robe.

8

After Defendant ordered Victim to disrobe, he sexually assaulted her. When the first instance of sexual assault was completed, he forced Victim at gunpoint to get up, leave the living room, get a bottle of lotion from the bathroom, and return to the living room, where he sexually assaulted her a second time. Although the kidnapping and the sexual assaults occurred in Victim's home during a fairly short period of time, the kidnapping was complete before the two acts of CSP II were committed. Defendant's acts of pointing a gun at her in her home, demanding money, and ordering her about constituted the taking, restraint, or confinement of Victim by force, intimidation, or deception. His act of ordering her to take off her robe at gunpoint supported a finding that he intended to inflict death, physical injury, or sexual offense on her. These acts occurred prior to the sexual assaults. Victim testified that the incident happened on June 3, 2005. In his taped confession, Defendant recounted almost exactly the same sequence of events.

Defendant's own words highlighted the differing objectives of the kidnapping and the sexual assaults. Defendant stated that when he first entered Victim's home, he intended to rob her. He sexually assaulted Victim intending "to take something else from her" because he was unable to deprive her of money. Intervening events included allowing Victim to let her dog out of the house and requiring her to leave the living room and get lotion between the sexual assaults. The evidence provided several indicia of distinctness.

It is clear that the act of kidnapping was complete before the first CSP II occurred. Further, after Defendant sexually assaulted Victim, he continued to hold the gun on her and order her about the house, then ripped the phone from the wall and stole her truck. The evidence supports a finding that the kidnapping continued after he completed the sexual assaults. *Cf. State v. McGuire*, 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990) (holding that double jeopardy was not violated where the defendant was convicted of both CSP and kidnapping, and the kidnapping was complete before the sexual assault occurred and continued throughout the course of the defendant's other crimes). Because the incidents are sufficiently distinct, we hold that Defendant's conduct was not unitary. Having made this determination, our inquiry ends, and we conclude that Defendant's convictions for CSP II and kidnapping do not violate double jeopardy.

Defendant also argues on appeal that the firearm enhancements for CSP II, aggravated burglary, and armed robbery constitute multiple punishment for the same action because the use of a firearm was also a specific element of each of these crimes. Defendant concedes that *State v. Roper*, 2001-NMCA-093, ¶ 20, 131 N.M. 189, 34 P.3d 133, holds that a defendant's conviction for a crime involving a deadly weapon does not violate double jeopardy when the punishment for that crime is enhanced under NMSA 1978, Section 31-18-16 (1993).

Defendant asserts that his case is distinguishable from existing case law requiring firearm enhancement because the jury instructions specifically called for the jury to find the use of a firearm, and not merely a deadly weapon. Defendant cites to no authority in support of his argument. An appellate court will not consider an issue if no authority is cited in support of the issue. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

We affirm Defendant's convictions and hold that no double jeopardy violations occurred.

**Ineffective Assistance of Counsel**

Defendant argues on appeal that he received ineffective assistance of counsel at trial resulting in prejudice against him. He contends that his attorney was ineffective because he failed to adequately question Detective Myers on the stand and failed to renew the motion to suppress Defendant's taped confession.

There is a two-part test for proving ineffective assistance of counsel; Defendant must show (1) that counsel's performance fell below that of a reasonably competent attorney, and (2) that Defendant was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The burden of proof

11

is on Defendant to prove both prongs. *Id.* Trial counsel is presumed competent. *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127.

The crux of Defendant's claim of ineffective assistance is that his trial counsel did not question Detective Myers about crucial differences between his testimony at the pretrial suppression hearing and his testimony at trial. Defendant argues counsel should have questioned Detective Myers more thoroughly at trial about the timeline of events that occurred the morning of Defendant's arrest, and then, based upon the testimony he would have elicited, renewed the motion to suppress Defendant's taped confession.

Defendant's motion to suppress the confession was denied at a pretrial suppression hearing. Trial counsel thoroughly questioned Detective Myers about the timeline of the morning Defendant was arrested. Counsel did not use Detective Myers' testimony at the suppression hearing to rebut any inconsistencies in his testimony at trial.

Defendant bears the burden of showing that, had he been represented by competent counsel, there is a reasonable probability that the outcome of the proceeding would have been different. *See Baca*, 1997-NMSC-045, ¶ 20. Here, ample evidence, including Victim's testimony, Victim's identification of Defendant, and undisputed DNA evidence link Defendant to the crimes for which he was convicted. There is little probability that the outcome of the trial would have been

12

different even if Defendant's attorney had renewed the motion to suppress his confession and the motion had been granted by the district court.

As the State argues in its answer brief, when a defendant has not established a prima facie case of ineffective assistance of counsel, this Court has expressed its preference for resolution of such claims through a habeas corpus proceeding. *State v. Herrera*, 2001-NMCA-073, ¶ 37, 131 N.M. 22, 33 P.3d 22. When the record does not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness, an evidentiary hearing may be necessary. *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494. In this case, Defendant's claims are based entirely upon the record before this Court. It is unlikely that an evidentiary hearing would provide any further insight into counsel's actions.

We hold Defendant has failed to meet his burden of showing that he was prejudiced by ineffective assistance of counsel.

**Sufficiency of the Evidence**

Defendant argues that insufficient evidence was presented at trial to support his convictions for two counts of receiving stolen property, larceny (over $250), and residential burglary. We address each count in turn.

"Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We

13

determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶10, 140 N.M. 606, 145 P.3d 86 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted).  On appeal, the appellate court views the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict.  *State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994).  Further, "the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998).

The first count of receiving stolen property involved a Ruger 7mm rifle and/or a Remington 12 gauge shotgun that were reported stolen from the home of Defendant's father, Richard LaCasse.  In order to prove beyond a reasonable doubt that Defendant committed the crime of receiving stolen property, it was necessary for the State to show that the items had been stolen; that Defendant disposed of the property; at the time he disposed of the property, Defendant knew or believed it was stolen; the property was a firearm; and this occurred in New Mexico on or about May 13, 2005.  UJI 14-1650 NMRA.

At trial, Richard LaCasse testified that when he was out of town in May 2005, his home was broken into, his gun safe was broken open, and a pistol, hunting rifle, and shotgun were stolen. Detective Upshaw testified that Defendant's former roommate, Curtis James, turned in the shotgun and rifle in question to the police, saying Defendant had left them at his home. In Defendant's taped confession, he admitted to breaking into his parents' home, breaking into the gun safe, and stealing one handgun (although not the rifle and shotgun). Viewing the evidence in the light most favorable to the verdict, we hold this evidence was sufficient to support the conviction.

The second count of receiving stolen property involved a DVD player, television, camcorder, DVDs, and/or a stereo that were also reported missing from the home of Richard LaCasse. As discussed above, a taped statement of Defendant admitting to breaking into his parents' home was played for the jury. Although Defendant claimed he did not steal anything from the home other than one handgun, some, though not all of the items listed (the television and camcorder), were recovered from the home of Curtis James, where Defendant had previously been staying.

Defendant argues that the State relies upon improper inference, and that merely leaving items at a home from which he had recently moved does not constitute disposing of property under NMSA 1978, Section 30-16-11 (1987) (amended 2006). Although all of the stolen items were not located, the presence of some of the items

15

stolen from his parents' home at or around the same time Defendant admitted to breaking into the home supports a finding that Defendant knew or believed the recovered items were stolen. Also, simply because stolen property is not recovered does not mean it was not disposed of. A reasonable jury could have permissibly inferred that Defendant did steal and dispose of the property listed above. We affirm Defendant's convictions for both counts of receiving stolen property.

To uphold Defendant's conviction for larceny, the State was required to prove beyond a reasonable doubt that Defendant took and carried away the DVD player, television, camcorder, DVDs, and/or a stereo, that the combined value of the items was greater than $250, that Defendant intended to permanently deprive the owner of the items, and that this occurred on or about May 13, 2005. *See* UJI 14-1601 NMRA. As discussed above, Defendant admitted breaking into his parents' home on or about May 13, 2005, and several of the items reported stolen were later recovered from the home of Defendant's former roommate. Richard LaCasse testified that the items' combined value exceeded $250 at the time they were stolen. This evidence is sufficient for a reasonable factfinder to determine Defendant committed the crime of larceny (over $250), and we affirm his conviction.

Finally, Defendant argues on appeal that insufficient evidence was presented to support his conviction for burglary. To convict Defendant for burglary, it was necessary for the State to prove beyond a reasonable doubt that Defendant entered a

16

dwelling without authorization, that he did so intending to commit a theft therein, and that this occurred on or about June 3, 2005. UJI 14-1630 NMRA. Douglas Weeks testified that on June 3, 2005, his home was broken into and several items were stolen from his home. At the same time, one of his vehicles was stolen from his driveway. Mr. Weeks testified that the keys to the stolen car had been inside his home. When the police recovered another vehicle that Defendant admitted to stealing, they located in and around the vehicle jewelry and other items that Mr. Weeks had reported stolen from his home.

Defendant testified that he did not burglarize the Weeks' home. However, Defendant knew the Weeks, and he was at their home the day of the burglary. He admitted to stealing the Weeks' Honda and entering their garage. All of this evidence supports a conviction for burglary. "The reviewing court does not weigh the evidence or substitute its judgment for that of the factfinder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789. Sufficient evidence was presented for the factfinder to have determined each element of burglary was proved beyond a reasonable doubt. We affirm Defendant's conviction for burglary.

Defendant argues, pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), that insufficient evidence supports the remainder of his convictions. Aside from those

17

convictions discussed above, Defendant does not specify why each count should be overturned. "It is [D]efendant's burden to bring up a record sufficient for review of the issues he raises on appeal." *State v. Jim*, 107 N.M. 779, 780, 765 P.2d 195, 196 (Ct. App. 1988).

A review of the record shows that at trial, the State presented ample evidence to support Defendant's remaining convictions, including: Defendant's taped confession, Victim's testimony, testimony from police officers regarding the recovery of the stolen vehicles and other stolen items, and uncontested DNA evidence. Defendant's argument that insufficient evidence supports his remaining convictions is without merit. We affirm Defendant's remaining convictions.

**Motion to Suppress**

Finally, Defendant contends that the district court erred in denying his motion to suppress his taped confession. He argues that the confession was coerced, resulted from improper custodial interrogation, and occurred after the police ignored his request for an attorney. On appeal from a district court's ruling on a motion to suppress, findings of fact are reviewed to determine if they are supported by substantial evidence and legal conclusions are reviewed de novo. *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171.

On appeal, Defendant does not point to any evidence to support his assertions of improper custodial interrogation. Similarly, he did not present any evidence

18

supporting his argument at the suppression hearing. Defendant presents only the arguments of his attorney to support his contention that he was subjected to improper custodial interrogation and that his request for an attorney was denied. An attorney's arguments are not evidence. *See State v. Boergadine*, 2005-NMCA-028, ¶ 37, 137 N.M. 92, 107 P.3d 532.

The district court found that Defendant was read his Miranda rights prior to any interrogation by the police; that he was not coerced, threatened, or promised anything in exchange for his statement; and that Defendant did not request an attorney. These findings are supported by the testimony of Detective Meyers at the suppression hearing. No evidence was presented at the hearing to contradict the testimony; we therefore hold that substantial evidence supported the district court's factual findings. Because the findings do not provide any support for Defendant's arguments, we affirm the district court's denial of Defendant's motion to suppress.

**CONCLUSION**

Based on the foregoing, we affirm the judgment and sentence of the district court.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**JONATHAN B. SUTIN, Judge**