This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS FOR THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

**v.**                                                                 No. A-1-CA-35709

**KRISTOPHER MORGAN,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred T. Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** Defendant Kristopher Morgan appeals his conviction for possession of a controlled substance (Methamphetamine) in violation of NMSA 1978, Section 30-31-23(E) (2011). Defendant contends that his rights to a speedy trial and to confront a witness were violated, and that there was insufficient evidence to support his conviction. We disagree and affirm.

## I. BACKGROUND

**{2}** Defendant was charged with possession of a controlled substance and of drug paraphernalia after police discovered both items of contraband in Defendant's hotel room on February 10, 2013. That day, Officers Chris McCasland and Amber Salter of the Clovis Police Department responded to a report of a high volume of traffic, and therefore possible narcotics activity, to and from a hotel room registered in Defendant's name. The officers arrived at the room, knocked on the door, and asked Defendant, who was alone in the room, if they could enter. Once permitted inside, Officer McCasland smelled an odor of marijuana and asked Defendant if he "had any dope." In response, Defendant looked at the table and said that it was "all gone." Officer McCasland then asked Defendant if other people had been in his hotel room, to which Defendant responded that some of his friends had been there previously.

**{3}** After running Defendant's identifiers through dispatch, the officers discovered warrants for his arrest and placed him under arrest. While still inside

2

the hotel room, Officer McCasland observed a metal pipe, hypodermic needles, and a crystal-like substance that, based on his training and experience, he recognized to be methamphetamine. Officer McCasland field tested the substance and confirmed that it was methamphetamine.

{4}     Based on the foregoing facts, Defendant was arrested and on February 21, 2013, and was indicted for possession of both the methamphetamine and drug paraphernalia. On March 11, 2016, Defendant filed a motion to dismiss on speedy trial grounds. Three days later the district court held a hearing on Defendant's motion and ruled that the State had not violated Defendant's right to a speedy trial. Defendant's trial began on March 17, 2016, after which he was convicted of both counts with which he was charged. To avoid unnecessary repetition, we discuss additional procedural history as necessary in our discussion of Defendant's speedy trial argument.

{5}     At trial, the State called two witnesses: Officer McCasland and Samuel Titone. Mr. Titone, a forensic scientist with the Department of Public Safety, testified regarding the results of a drug analysis he did not personally conduct and that was detailed in a report he did not personally generate. Outside the presence of the jury, Mr. Titone testified that based upon his review of the report, his conclusion matched that of Randall Rees, the prior forensic scientist who actually evaluated the drug evidence but did not testify at trial. Upon being permitted to do

so and with the jury back in the courtroom, Mr. Titone testified that, based on his review of the raw data contained in the report, the testing instrument Mr. Rees used was clean and the substance seized from Defendant's hotel room and tested by Mr. Rees was methamphetamine.

**II.     DISCUSSION**

{6}     Appealing only his conviction for possession of a controlled substance, Defendant argues that (1) he was denied his right to a speedy trial, (2) Mr. Titone's testimony violated his right to confront and cross-examine Mr. Rees, and (3) the evidence was insufficient to support his conviction. We address each of Defendant's arguments in turn.

**A.     The District Court Did Not Err in Denying Defendant's Motion to Dismiss on Speedy Trial Grounds**

{7}     Criminal defendants in New Mexico are entitled to a speedy and public trial under both the United States and New Mexico Constitutions. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"); N.M. Const. art. II, § 14 ("In all criminal prosecutions, the accused shall have the right to . . . a speedy public trial[.]"). "Whether a defendant has been deprived of the right requires a case-by-case analysis." *State v. Dorais*, 2016-NMCA-049, ¶ 20, 370 P.3d 771. In analyzing a defendant's speedy trial claim, we must assess "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the

4

defendant." *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). "Each of these factors is weighed either in favor of or against the state or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *State v. Brown*, 2017-NMCA-046, ¶ 13, 396 P.3d 171 (alteration, internal quotation marks, and citation omitted), *cert. granted*, 2018-NMCERT-___ (No. S-1-SC-36385, April 26, 2017). No single factor is a necessary or sufficient condition to a finding of a violation of a defendant's right to a speedy trial, and all must be considered together with other relevant circumstances. *Id*. We defer to the district court's factual findings and weigh the four speedy trial factors de novo. *Dorais*, 2016-NMCA-049, ¶ 20.

**1.    Length of Delay**

{8}    The "length of delay" factor helps us determine whether the delay in a defendant's case is "presumptively prejudicial" and would therefore require further analysis of the remaining factors. *Brown*, 2017-NMCA-046, ¶ 14 (internal quotation marks and citation omitted). "A delay of trial of twelve months is presumptively prejudicial in simple cases[.]" *State v. Flores*, 2015-NMCA-081, ¶ 5, 355 P.3d 81. The "long[er] the delay extends beyond this presumptively prejudicial period, . . . the more heavily it will potentially weigh against the state." *Id*. (alteration, internal quotation marks, and citation omitted). "We calculate the

5

length of delay from the time the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *Id.* (internal quotation marks and citation omitted).

**{9}** Both Defendant and the State agree that February 10, 2013—the date of Defendant's arrest—was the point at which Defendant's speedy trial right attached. Additionally, both parties concede that this case was simple under our precedent. The case was brought to trial on March 17, 2016. The length of delay was therefore thirty-seven months and seven days. There being a twenty-five month delay past the presumptively prejudicial threshold, we initially conclude that the delay was presumptively prejudicial and weigh the length of delay heavily against the state. *See State v. Gallegos*, 2016-NMCA-076, ¶ 8, 387 P.3d 296 (concluding that a delay of approximately twenty months past the one-year threshold for a simple case is weighed heavily against the state). We thus proceed to analyze the remaining factors.

**2. Reasons for Delay**

**{10}** Closely related to the length of delay, the State's justification for the delay "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). There are four types of delay: (1) "intentional delay" is the state's deliberate attempt to delay a case in order to hamper the defense and weighs

6

heavily against the state; (2) "negligent or administrative delay" weighs more lightly against the state, but weighs more heavily against the state as the length of delay increases; (3) delay justified for valid reasons, such as periods of time when the case is moving toward trial with customary promptness, is neutral and does not weigh against either party; and (4) delay caused by the defendant is weighed against the defendant. *Brown*, 2017-NMCA-046, ¶¶ 18, 19 (internal quotation marks and citations omitted).

{11}     Our review of the record here reveals that the reasons for the trial delay appear to have been attributable to both Defendant and the State. Defendant filed a motion to suppress evidence three days prior to the initial jury selection scheduled for December 19, 2013. Consequently, jury selection and trial were continued. On January 8, 2014, Defendant, citing the pendency of his motion to suppress, filed a stipulated motion for a continuance which also purported to "waive[] time completely." In its ruling on Defendant's speedy trial motion, the district court ruled that Defendant was responsible for the delay attributable to his motion to suppress up until the motion hearing on May 30, 2014. Ultimately, the district court granted Defendant's motion to suppress on June 10, 2014. For purposes of speedy trial analysis, this period of time is attributable to Defendant. *See State v. O'Neal*, 2009-NMCA-020, ¶ 21, 145 N.M. 604, 203 P.3d 135 (concluding that the delay caused by the defendant's motions is weighed against the defendant).

7

{12}     Following the district court's granting of Defendant's motion to suppress, the State appealed to this Court, which reversed. The State appealed from the district court's ruling on October 8, 2014, and this Court reversed on May 27, 2015, and issued its mandate on October 8, 2015. *See State v. Morgan*, A-1-CA-No. 34183, mem. op. (N.M. Ct. App. May 27, 2015) (non-precedential).

{13}     Furthermore, Defendant failed to appear at two pretrial settings—one preceding the State's appeal and the other following the State's appeal—which resulted in separate bench warrants and arrests. First, Defendant failed to appear at a pretrial conference on May 29, 2013, and was arrested pursuant to the district court's bench warrant on July 20, 2013. Second, Defendant failed to appear at a docket call on January 26, 2016. Consequently, the district court cancelled the February 5, 2016 trial and rescheduled it for March 17, 2016. We agree with the district court that the approximately nine-month delay resulting from Defendant's motions and failures to appear thus weigh in the State's favor. *See State v. Talamante*, 2003-NMCA-135, ¶ 14, 134 N.M. 539, 80 P.3d 476 (concluding that the delay resulting from a defendant's failure to appear at a court proceeding is attributable to the defendant).

{14}     The district court ruled that approximately fifteen months of delay were attributable to the State. However, the district court weighed several periods of neutral delay against the State. We conclude that the State is responsible for the

eleven days from Defendant's arrest to his indictment, *see State v. Valencia*, 2010-NMCA-005, ¶ 20, 147 N.M. 432, 224 P.3d 659 (holding that the period between a defendant's arrest and indictment weigh against the state), the three months and twenty-eight days from when the district court initially granted Defendant's motion to suppress on June 10, 2014, to when the State initiated its successful appeal from the district court's ruling on October 8, 2014—during which time the State unsuccessfully moved for the district court to reconsider—*see Flores*, 2015-NMCA-081, ¶ 26 (holding that a period of delay that included the state's motion to reconsider the district court's grant of the defendant's motion to suppress, but not its appeal of the district court's ruling, was categorized as administrative delay to be weighed against the state), and the three months and eighteen days from when this Court issued its mandate to the district court to when Defendant failed to appear at the January 26, 2016 docket call. *See State v. Samora*, 2016-NMSC-031, ¶ 17, 387 P.3d 230 (holding that the time between the Supreme Court's dispositional order to the date of trial is an "administrative delay[] which weigh[s], if at all, only slightly against the [s]tate"). Therefore, the approximately eight months of delay attributable to the State are weighed in Defendant's favor.

{15}     The remaining twenty months includes periods when the case was either proceeding normally toward trial or pending during a non-frivolous appeal. Therefore, this period is weighed neutrally. *See Brown*, 2017-NMCA-046, ¶ 19

9

(holding that the period during which a case proceeds normally toward trial does not weigh against either party); *Valencia*, 2010-NMCA-005, ¶ 20 (concluding that the case was moving toward trial with customary promptness and would not count against the state during the period between court proceedings when the state subpoenaed its witnesses and indicated it was ready for trial); *see also State v. Suskiewich*, 2016-NMCA-004, ¶¶ 13, 23, 363 P.3d 1247 (holding that the time during which the state's non-frivolous appeal is pending is not weighed against either party).

{16} We conclude that, of the delay of thirty-seven months and seven days, approximately nine months weigh in the State's favor, approximately eight months weigh in Defendant's favor, and approximately twenty months weigh as neutral delay. Defendant is thus responsible for most of the non-neutral delay in his case, meaning that the amount of delay here caused by the State falls approximately four months short of the twelve-month presumptively prejudicial time period. Overall, the reasons for the delay weigh in the State's favor.

**3. Assertion of the Right**

{17} "The timeliness and vigor with which the right to a speedy trial is asserted may be considered as an indication of whether a defendant was denied the right to a speedy trial over his objection or whether the issue was raised on appeal as an afterthought." *Brown*, 2017-NMCA-046, ¶ 29 (alterations, internal quotation

10

marks, and citation omitted). Consequently, we consider the timing and manner of a defendant's assertion, the frequency and force of a defendant's objections to the delay in his case, and a defendant's actions with regard to the delay. *Garza*, 2009-NMSC-038, ¶ 32.

{18} Relying on counsel's argument in his March 11, 2015 motion to dismiss, Defendant asserts that he first asserted his speedy trial right on February 15, 2013. However, we have no factual basis in the record from which we can conclude Defendant asserted his right to a speedy trial prior to October 20, 2014. *See State v. Jim*, 1988-NMCA-092, ¶ 3, 107 N.M. 779, 765 P.2d 195 ("It is [the] defendant's burden to bring up a record sufficient for review of the issues he raises on appeal."); *see also State v. Wacey C.*, 2004-NMCA-029, ¶ 13, 135 N.M. 186, 86 P.3d 611 ("Arguments of counsel are not evidence and cannot be used to prove a fact."). Moreover, in the first assertion for which we have a factual record, the motion's title was altered to remove the words "Reassertion of," indicating to us that this October 20, 2014 assertion was indeed Defendant's first assertion. Reviewing Defendant's speedy trial argument in light of October 20, 2014—more than twenty months after the date of his arrest—being the first date of his expression of his desire to assert his right to a speedy trial, reinforces our conclusion that substantial periods of delay are directly attributable to Defendant's motion practice and failures to appear. *See State v. Montoya*, 2015-NMCA-056,

11

¶ 22, 348 P.3d 1057 ("The effect of a defendant's assertion of his speedy trial right may be diluted where his own actions caused the delay."); *Flores*, 2015-NMCA-081, ¶ 31 ("[T]he force of a defendant's assertions is mitigated where he filed motions that were bound to slow down the proceedings[.]" (internal quotation marks omitted)); *State v. Moreno*, 2010-NMCA-044, ¶ 33, 148 N.M. 253, 233 P.3d 782 ("We recognize that generally, the closer to trial an assertion is made, the less weight it is given."); *cf. In re Darcy S.*, 1997-NMCA-026, ¶¶ 28, 32, 123 N.M. 206, 936 P.2d 888 ("Considering the Child's contributing delay in concluding the proceedings both prior to and following her speedy-trial demand, we believe this factor should not be weighed in favor of either party."). Given that Defendant did not assert his right to a speedy trial before October 20, 2014, and that he was the primary source of delay after he invoked his right, we conclude that this factor does not favor Defendant.

**4.     Prejudice**

{19}     "The heart of the right to a speedy trial is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. The right to a speedy trial is essential to: (1) preventing oppressive pretrial incarceration; (2) minimizing a defendant's anxiety and concern; and (3) limiting the possibility that the defendant will be impaired in his defense. *Id*. Defendant bears the burden of production on this issue. *State v. Urban*, 2004-NMSC-007, ¶ 17, 135 N.M. 279, 87 P.3d 1061. "[The

12

d]efendant must make a particularized showing of prejudice to demonstrate a violation of any of the three interests." *State v. Samora*, 2016-NMSC-031, ¶ 21, 387 P.3d 230.

{20} Defendant first argues that he need not show prejudice, and cites several distinguishable cases in support of this argument. *See Doggett v. United States*, 505 U.S. 647, 657-58 (1992) (holding that the defendant suffered presumptive prejudice as a result of an eight-and-one-half year delay in his case); *Garza*, 2009-NMSC-038, ¶ 39 ("[I]f the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated."). Defendant's case, however, did not involve the kind of extraordinary length of delay at issue in *Doggett*. Furthermore, unlike in *Garza*, Defendant acquiesced and participated in the delay in his case, and the reasons for the delay do not weigh heavily in his favor. We therefore reject this argument. In the alternative, Defendant argues that he suffered from all three forms of prejudice. We address each in turn.

{21} Defendant first asserts that the delay in his case resulted in a pretrial incarceration of one year, five months, and five days. However, the record indicates that, during at least some portion of Defendant's pretrial incarceration, he was incarcerated on another matter and had five to seven months of incarceration

13

remaining for that matter. Despite having the burden of production, Defendant presented no evidence nor any argument that would allow this Court to review whether, and to what extent, he was incarcerated solely on the charges in this case. *See Urban*, 2004-NMSC-007, ¶ 17 ("[The d]efendant was incarcerated on other charges and thus, despite the delay, was not subject to oppressive pretrial incarceration."). Furthermore, Defendant argues that his pretrial incarceration deprived him of the possibility of earning meritorious deductions while in the New Mexico Department of Corrections. On this account, as well, Defendant has failed to present facts that demonstrate prejudice. *See State v. Salazar*, 2018-NMCA-030, ¶ 28, \_\_\_ P.3d \_\_\_ (rejecting a defendant's unsupported argument that he was prejudiced from pretrial incarceration when he lost the opportunity to earn good time on his probation violation), *cert. denied*, \_\_\_ P.3d \_\_\_ (No. S-1-SC-36939, Apr. 13, 2018).

{22}     Defendant next asserts that, because of his pretrial incarceration and the resulting loss of his liberty and the opportunity to seek the rehabilitation he desired, he experienced great anxiety and concern. "Because some oppression and anxiety are inevitably suffered by every defendant awaiting trial, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Samora*, 2016-NMSC-031, ¶ 21 (internal quotation marks and citation omitted). Here, Defendant has not made a particularized showing of undue

14

anxiety or concern. *Gallegos*, 2016-NMCA-076, ¶ 29, 387 P.3d 296 (concluding that the defendant did not suffer prejudice based on undue anxiety or concern when his assertions were not explained in detail and were not supported by affidavits, testimony, or documentation). Absent specific facts regarding this assertion, we will not presume it to be true.

{23} Finally, Defendant asserts that the delay impaired his defense because two of the State's witnesses—Officer Salter and Mr. Rees—were unavailable for trial. Although Defendant states that Officer Salter was present at the time the drugs were seized and Mr. Rees performed the drug test and prepared the report in this case, Defendant has failed to show with particularity how their unavailability impaired his defense. *See Garza*, 2009-NMSC-038, ¶ 36 ("If the defendant asserts that the delay caused the unavailability of a witness and impaired the defense, the defendant must state with particularity what exculpatory testimony would have been offered, and the defendant must also present evidence that the delay caused the witness's unavailability." (alterations, internal quotation marks, and citations omitted)).

{24} We therefore conclude that Defendant has not made a cognizable showing of prejudice.

**5.    Balancing the Factors**

15

{25}     In sum, the length of delay weighs heavily in Defendant's favor, the reasons for delay weigh in the State's favor, the assertion of the right weighs in neither party's favor, and Defendant has failed to show prejudice. On balance, we conclude that Defendant's right to a speedy trial was not violated. *See id.* ¶¶ 32, 34 (holding that, in the absence of a showing of prejudice, the remaining factors must weigh heavily in the defendant's favor to conclude that the defendant's right to speedy trial was violated); *see also Gallegos*, 2016-NMCA-076, ¶¶ 29, 31 (concluding that there was no violation of a defendant's speedy trial right when the length of delay weighed heavily in the defendant's favor, he adequately asserted his right, the reasons for delay did not weigh in his favor, and he made no particularized showing of prejudice).

**B.     The District Court Did Not Err in Admitting Mr. Titone's Testimony**

{26}     Defendant next argues that the forensic testimony of Mr. Titone violated his right of confrontation. The Sixth Amendment of the United States Constitution guarantees every criminal defendant "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause prohibits the admission of an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted "unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Smith*, 2016-NMSC-007, ¶ 42, 367 P.3d 420 (internal quotation marks and citation

omitted). A statement is considered "testimonial when [its] primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *State v. Navarette*, 2013-NMSC-003, ¶ 8, 294 P.3d 435 (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). The Confrontation Clause prohibits the state from introducing a forensic laboratory report containing testimonial certification through the testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification, unless the scientist who made the certification is unavailable at trial and the defendant had an opportunity before trial to cross-examine that scientist. *Bullcoming v. New Mexico*, 564 U.S. 647, 652 (2011). However, "an expert who has analyzed the raw data generated by another analyst and who has formed independent conclusions based upon that analysis may testify as to those conclusions." *State v. Huettl*, 2013-NMCA-038, ¶ 36, 305 P.3d 956. We review questions of "whether out-of-court statements are admissible under the Confrontation Clause" de novo. *State v. Largo*, 2012-NMSC-015, ¶ 9, 278 P.3d 532.

{27} At Defendant's trial, Mr. Titone gave his expert opinion that, based on the raw data contained in Mr. Rees's report, the substance tested was methamphetamine. Defendant concedes that Mr. Titone's testimony concerning his independent review of the raw data contained in Mr. Rees's report conforms to the strictures set forth in *Huettl*. However, Defendant argues that Mr. Titone also

17

testified that his conclusion was the same as that of Mr. Rees and that Mr. Rees followed all laboratory procedures. But our review of the record indicates that, to the extent such testimony bore the capacity to violate Defendant's confrontation right, it was elicited outside the presence of the jury and was therefore harmless to Defendant. *See State v. Rivas*, 2017-NMSC-022, ¶ 52, 398 P.3d 299 ("A critical inquiry in the determination of whether a given error is harmless is the question of whether the error was likely to have affected the *jury's* verdict." (emphasis added) (internal quotation marks and citation omitted)). Defendant additionally argues that Mr. Titone testified about the procedures followed by Mr. Rees, in violation of Defendant's confrontation right. However, Mr. Titone only testified regarding his own independent conclusions based on the raw data, including the "spectrometer data" that showed that the instrument used to perform the test was clean. These statements were admissible and do not violate the Confrontation Clause. *See Huettl*, 2013-NMCA-038, ¶ 36 ("[A]n expert who has analyzed the raw data generated by another analyst and who has formed independent conclusions based upon that analysis may testify as to those conclusions."). Accordingly, we conclude that the district court did not err in admitting Mr. Titone's testimony.

**C.    Defendant's Conviction Is Supported by Sufficient Evidence**

{28}    Defendant finally argues that his conviction for possession of a controlled substance was not supported by sufficient evidence because he did not have the

18

methamphetamine on his person and the State was unable to establish Defendant was in constructive possession of the methamphetamine. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). "In that light, the Court determines whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Id.* (alterations, internal quotation marks, and citation omitted).

{29}    To convict Defendant of possession of a controlled substance (methamphetamine), the jury was instructed that it had to find beyond a reasonable doubt that: (1) ". . . Defendant had methamphetamine in his possession"; (2) ". . . Defendant knew it was methamphetamine"; and (3) "[t]his happened in New Mexico on or about [February 10], 2013." Furthermore, the jury was instructed that a person is in possession of methamphetamine when he exercises control over it and either knows it is on his person or in his presence, or he knows where it is if the substance is not in his physical presence.

**{30}** The State established that Defendant was the sole occupant of the hotel room registered in his name when the police entered the room and found methamphetamine in plain view. These facts are sufficient evidence upon which a jury could conclude that Defendant was knowingly in possession of the methamphetamine. *See State v. Montoya*, 1973-NMCA-060, ¶¶ 4-5, 85 N.M. 126, 509 P.2d 893 (holding that there was sufficient evidence to show the defendant was knowingly in constructive possession of heroin when, without the defendant being present and after people were seen going inside for a few minutes before leaving, police searched the defendant's motel room and found "one cap of suspected heroin"); *see also State v. Chandler*, 1995-NMCA-033, ¶ 10, 119 N.M. 727, 895 P.2d 249 ("Proof of possession of illegal drugs may be established by circumstantial as well as direct evidence. Possession may be actual or constructive. Constructive possession exists when a defendant has knowledge of and control over the drugs." (citations omitted)).

**CONCLUSION**

**{31}** The judgment and sentence are affirmed.

**{32}** **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**STEPHEN G. FRENCH, Judge**

_____
**EMIL J. KIEHNE, Judge**